IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| SHANICE KLOSS, individually and on behalf of similarly situated individuals, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| CASHCRATE, LLC, a Nevada limited liability, | ) ) ) |
| Defendant. | ) ) |

**NOTICE OF REMOVAL**

Defendant CashCrate, LLC ("CashCrate") hereby removes to the United States District Court, Northern District of Illinois, the above-styled action, pending as Case No. 2018-CH-13520 in the Circuit Cook of Cook County, Illinois, Chancery Division (the "State Court Action"). As discussed below, this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d)(2).

**I.      Claims Asserted and Relief Sought**

1. On October 30, 2018, Plaintiff Shanice Kloss filed her Class Action Complaint & Jury Demand against CashCrate, individually and on behalf of a putative class. (*See* "Complaint," attached hereto as Exhibit A.)

2. Plaintiff alleges that CashCrate was the target of a "Data Hack on its information technology ('IT') systems" and that "[t]his Data Breach resulted in unauthorized outside parties gaining access to CashCrate's customers' sensitive and confidential personal information, including their names, home and business addresses, email addresses, demographic information, and passwords ('PII')." (*Id.* ¶¶ 1-2.) Plaintiff further alleges that "CashCrate's lax cybersecurity procedures allowed hackers to obtain access to Plaintiff's and other customers' PII" and that

"[a]fter accessing CashCrate's IT systems, hackers were able to extract the PII for over six million (6,000,000) CashCrate account holders." (*Id.* ¶¶ 3-4.)

3. Plaintiff defines a putative Class and Subclass as follows:

> **Class:** All persons whose Personal Information was in the possession of Defendant, or any of its subsidiaries, at any point during the Data Breach."
>
> **Illinois Subclass:** All Illinois residents whose Personal Information was in the possession of Defendant, or any of its subsidiaries, at any point during the Data Breach."

(*Id.* ¶ 26.) Plaintiff further alleges that "[a]lthough the exact number of Class [sic] is currently unknown, it is believed to be over six million (6,000,000)[.]" (*Id.* ¶ 28.)

4. Plaintiff's Complaint has four Counts. Count I alleges that CashCrate violated the Illinois Personal Information Protection Act ("PIPA"), 815 ILCS 530/1, *et seq.* by "failing to safeguard its customers' PII, and subsequent failure to timely notify its customers that such PII had been compromised[.]" (*Id.* ¶ 36.) Plaintiff further alleges that CashCrate's purported violation of PIPA constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* (*Id.* ¶ 37.) Count II alleges that CashCrate "breached the contracts it made with Plaintiff and the Class members by failing to safeguard and protect their PII, and by failing to notify them in a timely and accurate manner that their PII was compromised as a result of the Data Breach." (*Id.* ¶ 45.) Count III alleges that CashCrate "breached the implied contracts it made with Plaintiff and the Class members by failing to safeguard and protect their PII, and by failing to notify them in a timely and accurate manner that that [sic] their PII was compromised as a result of the Data Breach." (*Id.* ¶ 53.) Finally, Count IV alleges that CashCrate engaged in negligent acts and omissions. (*Id.* ¶¶ 57-62.)

**II.     Removal is Proper Under CAFA**

5.     As demonstrated more fully below, the State Court Action is removable pursuant to CAFA.  The State Court Action is a "class action" within the meaning of 28 U.S.C. § 1332(d)(1)(A)-(B); the removal is timely; there is diversity of citizenship between Plaintiff and Defendant; there are at least 100 putative plaintiff class members; and the amount in controversy exceeds $5,000,000, exclusive of interests and costs.  *See id.* §§ 1332(d)(2), (d)(5)(B), (d)(6), 1441, 1446, 1453.

    **A.     This Matter is a Class Action as Defined by CAFA**

6.     The State Court Action is a class action as defined by CAFA.  CAFA provides:

> [T]he term "class action" means any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedures authorizing an action to be brought by 1 or more representative persons as a class action.

28 U.S.C. § 1332(d)(1)(B).

7.     Plaintiff filed the State Court Action as a putative class action on behalf of herself and others similar situated.  (Complaint ¶¶ 26-33.)  Plaintiff's Complaint therefore falls within the definition of a class action under CAFA.

    **B.     The Putative Class Exceeds 100 Members**

8.     CAFA requires that a putative class consist of at least 100 persons.  28 U.S.C. § 1332(d)(5).  The Complaint here alleges that the class is believed to consist of over six million people.  (Complaint ¶ 28.)  CashCrate denies that the proposed class is proper, but, for purposes of this Notice of Removal, agrees that there are more than 100 putative class members.  Thus, the total number of putative class members clearly is satisfied.

### C. Minimal Diversity Exists

9. Minimal diversity exists under CAFA where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Here, Plaintiff and CashCrate have diversity of citizenship.

10. Plaintiff is a citizen of Illinois. (*See* Complaint ¶ 7.)

11. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principle place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). *See also Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 927 n. 3 (N.D. Ill. 2015). CashCrate is a Nevada limited liability company. (Complaint ¶ 6.) CashCrate has its principle place of business in New York. (Exhibit B, Declaration of Joseph Coleman ¶ 5.) Thus, for diversity jurisdiction purposes under CAFA, CashCrate is a citizen of Nevada and New York.[1]

### D. The Amount in Controversy Requirement is Satisfied

12. CAFA provides that the district court shall have original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy, CAFA requires that "the claims of the individual class members shall be aggregated[.]" 28 U.S.C. § 1332(d)(6). Although Plaintiff has not alleged the amount of damages, CAFA's amount in controversy threshold is met here based on Plaintiff' allegations and undisputed facts.

---

[1] CAFA is unique in how it treats limited liability companies for diversity jurisdiction purposes. Typically, limited liability companies "have the citizenships of their members." *RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d 689, 691 (7th Cir. 2016); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009). CashCrate's sole member is Joe Coleman, who is a citizen of New York. (*See* Exhibit B, Declaration of Joseph Coleman, ¶¶ 2, 4.) Therefore, under traditional diversity principles, CashCrate would be a citizen of New York.

13. "As specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008).

14. As an initial matter, CashCrate denies any violation of Illinois law, that this matter is suitable for treatment as a class action, or that any relief is appropriate in this matter. That said, Plaintiff's allegations demonstrate that the amount in controversy exceeds the jurisdictional threshold. As noted above, Plaintiff alleges that the putative class exceeds six million people. (Complaint ¶ 28.) As to each of those persons, Plaintiff seeks relief that includes "actual, statutory, compensatory, and/or punitive damages." (*Id.* at 13.) Assuming that the Court found that each member of the putative class only was entitled to a nominal amount of monetary damages -- for example, anything above $.84 -- the jurisdictional threshold would be met (6,000,000 x $.84 = $5,040,000).[2] Plaintiff additionally seeks that "Defendant [] furnish identity fraud monitoring and mitigation services for a reasonable period of time." (*Id.*) Fraud monitoring and mitigation services often cost roughly $10 per month.[3] Thus, if the Court found that CashCrate was required to furnish each member of the putative class even one month of fraud monitoring and mitigation services, the cost would well exceed the jurisdictional threshold (6,000,000 x $9.95 = $59,700,000). Plaintiff additionally seeks that CashCrate "pay Plaintiff's

---

[2] Plaintiff also seeks punitive damages. (Complaint at 13.) The Seventh Circuit has indicated that a 5:1 ratio of punitive damages to compensatory damages is legally possible under the ICFA. *See Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011).

[3] For example, LifeLock offers its standard service at $9.99 per month, *see* https://www.lifelock.com/#LL_NORTON, and IDShield offers its service at $9.95 per month, *see* https://www.idshield.com/plans-pricing.

5

and the Class members' reasonable attorneys' fee, expenses, and costs." (*Id.*) Accordingly, the aggregate value of the Plaintiff's claims plainly exceeds $5,000,000, and the matter in controversy threshold under 28 U.S.C. § 1332(d)(2) is met.

### III.     The Procedural Requirements for Removal Have Been Satisfied

15.     This notice is timely.  A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other paper from which it may be ascertained that the case is removable.  28 U.S.C. § 1446(b).  CashCrate was served on November 6, 2018.  CashCrate is filing this notice within 30 days of the date of service on CashCrate.  Therefore, this Notice of Removal is timely filed.

16.     Removal to this Court is proper because the United States District Court for the Northern District of Illinois, Eastern Division, is the "district and division within which" this action was filed – namely, Cook County, Illinois.  28 U.S.C. § 1446(a).

17.     A copy of all process, pleadings and orders served upon CashCrate are attached to this Notice of Removal as Exhibit A in accordance with 28 U.S.C. § 1446(a).

18.     CashCrate will promptly give written notice of the Notice of Removal to the adverse party and file this Notice of Removal with the Circuit Court of Cook County promptly in accordance with 28 U.S.C. § 1446(d).

19.     By filing this Notice of Removal, CashCrate does not waive any defenses available to it.  By filing this Notice of Removal, CashCrate does not admit any of the allegations of Plaintiff's Complaint.  CashCrate expressly reserves the right to contest those allegations at the appropriate time.

WHEREFORE, CashCrate removes the State Court Action to this Court for further proceedings as provided by law.

Dated:  December 4, 2018                                        Respectfully submitted,

/s/ Steven Wernikoff
Steven M. Wernikoff
Vikram A. Mathrani
Honigman Miller Schwartz and Cohn LLP
155 North Wacker Drive, Suite 3100
Chicago, IL  60606
Telephone:     312-701-9300
Facsimile:     312-701-9335

## **CERTIFICATE OF SERVICE**

I, Steven Wernikoff, hereby certify that I caused a copy of the foregoing **Notice of Removal** to be served on counsel below via messenger delivery and email on December 4, 2018.

> Jad Sheikali
> William Kingston
> McGuire Law, P.C.
> 55 W. Wacker Dr., 9th Floor
> Chicago, IL  60601
> jsheikali@mcgpc.com
> wkingston@mcgpc.com

>> */s/* Steven Wernikoff
>> Steven Wernikoff